Smith, J.
(dissenting). Because I believe that there was no basis for the officer to ask defendant to search the trunk, I dissent and vote to reverse.
At 3:00 a.m. on January 31, 1992 in the City of Jamestown, New York, defendant’s car, driven by another individual,- was stopped for proceeding the wrong way down a one-way street. The officer stopping the vehicle transmitted his stop over the police radio. The officer’s transmission was heard by a fellow officer who came to the scene to assist.
Upon arrival at the scene, the second officer was informed by the first officer, who was seated in his patrol car issuing citations for the traffic violation, that the driver had given a false name because a computer check using the name given had come back negative. The first officer also stated that the owner was in the back seat of the car with a female companion. The second officer immediately approached the car and requested of defendant to search the trunk, and defendant agreed. The officer admitted that at the time he requested to search, he was not looking for anything in particular and had no information about the vehicle. His request was based on the hour, the giving of a false name and the fact that the car had gone the wrong way on a one-way street. In the trunk the officer saw a duffel bag and requested to search it. Defendant *757 stated that the bag contained laundry, and he did not want it searched. The officer did not search it. The officer then picked up a wooden box and requested to search it. Defendant denied ownership of the box. The officer searched the box and found a small handgun. Defendant was frisked and two knives were found, one a gravity knife. Defendant was placed in the first officer’s patrol car and a consent to search form was completed by the officer. Defendant refused to sign the form, indicating he had previously given consent to search. After a supervisor arrived, the second officer informed him that a search of the vehicle’s trunk revealed a handgun and a search of defendant revealed an illegal gravity knife. Defendant was placed under arrest shortly after the supervisor arrived. Defendant was taken to the Jamestown Holding Center where a search of his person revealed cocaine and over two thousand dollars in United States currency.
After the supervisor’s arrival, he left the scene, apparently to research a point of law, and then returned and directed a search of the entire vehicle. Quantities of cocaine, marihuana and chukka sticks were found in the passenger compartment and the glove compartment. A third officer arrived at approximately 3:45 a.m., apparently after the entire vehicle had been searched, and was instructed by the second officer to obtain personal information from the female occupant in the car. The officer was informed, upon questioning her, that the car contained "bad stuff,” drugs.
Defendant’s motion to suppress the items found was denied, as was his motion to reargue. The Appellate Division affirmed, concluding that the driver’s giving the first officer a false name heightened the officer’s suspicion and justified further inquiry, including the request to search the car.
The facts known to the second officer did not justify a request to search the defendant’s trunk (People v Hollman, 79 NY2d 181, 194). The second officer stated that his request to search the car was based upon the hour, driving the wrong way down a one-way street and the giving of a false name. No criminal activity was indicated. Moreover, there is no showing on this record that the driver of the vehicle gave a false name. All that appears in the record is that the name of the driver did not appear in the computer. It does not automatically follow that the driver gave a false name. Nor was the statement by the driver sufficient to permit the police to request a search of the vehicle from the defendant.
*758 It should be emphasized that the officer’s request of the defendant to search the trunk was made with absolutely no inquiry of the defendant. In People v Hollman, we clarified the difference between a request for information and a common-law right of inquiry, first delineated in our decision in People v De Bour (40 NY2d 210). We stated that "a request for information is a general, nonthreatening encounter in which an individual is approached for an articulable reason and asked briefly about his or her identity, destination, or reason for being in the area” (79 NY2d, at 191). "Once the police officer’s questions become extended and accusatory and the officer’s inquiry focuses on the possible criminality of the person approached,” the officer is no longer seeking information. "The encounter has become a common-law inquiry that must be supported by founded suspicion that criminality is afoot” (Hollman, supra, at 191). Here, the second officer made no inquiry whatsoever and simply requested that he be permitted to search the car.
Certainly, the initial stop of defendant’s car, travelling the wrong way on the roadway, was valid. Additionally, at that point, the officers were clearly entitled to request information from the occupants of the vehicle. However, we conclude that the facts known to the second officer did not justify a request to search defendant’s trunk — an intrusive inquiry requiring a founded suspicion of criminality (People v Be Bour, 40 NY2d 210, 223, supra; People v Hollman, 79 NY2d, at 194).
The second officer stated that his request to search the trunk was based upon the hour, the fact that the car had been driven the wrong way, and the driver’s giving of a name that could not be verified by a computer check. At that point, the officers would have been justified to continue their questioning of the vehicle’s occupants. Critically, however, at that time, there was no indication that the occupants had been engaged in any criminal activity that would have justified an intrusive request to search. There was no suggestion that the car was stolen. Indeed, the police were properly informed by the driver that the car belonged to defendant, seated in the back seat. Additionally, no contraband or other evidence of criminality was visible to the officers in plain view. Finally, the fact that the name given by the driver resulted in a negative computer check was itself nonindicative of criminality (see, People v Milaski, 62 NY2d 147, 156). Accordingly, the proper predicate for a request to search the trunk of defendant’s car was lacking.
*759 In addition, the entire vehicle was searched apparently as the result of the supervisor’s research of the law and not because of the statement of the woman in the car that there were drugs. Her statement, therefore, did not form an independent basis for the search.
Chief Judge Kaye and Judges Simons, Bellacosa and Levine concur; Judge Smith dissents and votes to reverse in an opinion in which Judges Titone and Ciparick concur.
Order affirmed in a memorandum.